**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHENZHEN KESITE DIGITAL
TECHNOLOGY CO., LTD,

              Plaintiff,

    v.

SCHEDULE A DEFENDANTS,

              Defendants.

Civil Case No.: 2:26-cv-01532-MJH

**FILED UNDER SEAL**

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* MOTION FOR 1) TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING ASSETS AND MERCHANT STOREFRONTS; 3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND 4) ORDER AUTHORIZING EXPEDITED DISCOVERY**

Zheng "Andy" Liu (CA-279327)
Aptum Law
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Email: Andy.Liu@AptumLaw.us
Phone: 650-475-6289

*ATTORNEY FOR PLAINTIFF*

1

**TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

II.  STATEMENT OF FACTS............................................................................................ 1

A.  Plaintiff's Copyrights and Products.............................................................. 1

B.  The Defendants' Wrongful Conduct.............................................................. 3

III.  ARGUMENT ................................................................................................................ 5

A.  The Court May Exercise Jurisdiction Over Defendants................................. 5

1.  The Court May Exercise Personal Jurisdiction Over Defendants Pursuant to 42 Pa. Cons. Stat. § 5322 ................................................................................................ 6

2.  Exercising Personal Jurisdiction Over Defendants Comports With Due Process...... 9

3.  The Court May Exercise Personal Jurisdiction Over Defendants Pursuant to Federal Rule of Civil Procedure 4(k)(2) ..................................................................... 13

B.  Plaintiff is Entitled to an Ex Parte Temporary Restraining Order and Preliminary Injunction ............................................................................................................ 16

1.  Plaintiff Will Likely Succeed on the Merits of the Litigation .................................... 18

2.  Plaintiff Will Suffer Irreparable Harm if Preliminary Relief is Not Granted............ 20

3.  The Balance of Hardship Tips in Plaintiff's Favor ........................................................ 22

4.  Issuance of the Temporary Restraining Order and Preliminary Injunction Serves the Public Interest ......................................................................................................... 24

C.  Plaintiff is Entitled to an Order (1) Preventing the Fraudulent Transfer of Assets, and (2) Freezing Defendants' Merchant Storefronts .......................................................... 25

1.  Defendants' Assets Must be Frozen................................................................................ 25

2.    Defendants' User Accounts and Merchant Storefronts Must be Frozen...................29

D.    Plaintiff is Entitled to an Order Authorizing Expedited Discovery...........................31

E.    Plaintiff's Request for a Security Bond in the Amount of $5,000 is Adequate .........36

IV.    **CONCLUSION**...................................................................................................................37

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Black Horse Pike Reg'l Bd. of Educ.*,

  84 F.3d 1471, 1477 nn. 2–3 (3d Cir. 1996) ................................................................ 18

*Airigan Solutions, LLC v. Artifacts_Selling*,

  Civil Action No. 18-cv-1462-NBF ........................................................................... 37

*Airigan Solutions, LLC v. Babymove*,

  Civil Action No. 19-cv-166-NBF ............................................................................. 37

*Allegheny Energy, Inc. v. DQE, Inc.*,

  171 F.3d 153, 158 (3d Cir. 1999) ............................................................................. 17

*Apple Computer, Inc. v. Franklin Computer Corp.*,

  714 F.2d 1240, 1254 (3d Cir. 1983) ...................................................................... 21, 24

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California*,

  480 U.S. 102, 109 (1987) .......................................................................................... 10

*AT&T v. Winback & Conserve Program*,

  42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ...................................................................... 25

*AW Licensing, LLC v. Bao*,

  2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. 2015) ............................................ 30

*Broadcast Music, Inc. v. Golden Horse Inn Corp.*,

  709 F. Supp. 580, 581–82 (E.D. Pa. 1989) ............................................................... 30

*Broadcast Music, Inc. v. Spring Mt. Bavarian Resort,*

    *LTD*, 555 F. Supp. 2d 537, 543 (E.D. Pa. 2008) ..................................................................... 29

*Burger King Corp. v. Rudzewicz,*

    471 U.S. 462, 475 (1985) ................................................................................................ 10, 14

*Central States Southeast and Southwest Areas Pension Fund,*

    2000 WL 1015937, at *4 (N.D. Ill. 2000) ............................................................................. 14

*CMM Cable, Inc. v. Keymarket Communs., Inc.,*

    870 F. Supp. 631, 640 (M.D. Pa. 1994) ............................................................................... 24

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,*

    843 F.2d 600, 612 (1st Cir. 1988) ........................................................................................ 23

*Dam Things from Denmark v. Russ Berrie & Co., Inc*

    ., 290 F.3d 548, 562 (3d Cir. 2002) ...................................................................................... 19

*Dama S.P.A.* v. *Doe,*

    2015 U.S. Dist. LEXIS 178076, at *4–6 (S.D.N.Y. June 12, 2015) ....................................... 28

*Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*

    , 501 F.2d 917, 919–20 (3d Cir. 1974) ................................................................................. 17

*Digital Sin, Inc. v. Does 1-176,*

    279 F.R.D. 239 (S.D.N.Y 2012) .......................................................................................... 34

*Doggie Dental Inc. v. Anywill,*

    No. 19-cv-682 (W.D. Pa. 2019) ........................................................................................... 37

*Doggie Dental Inc. v. Go Well*,

    No. 19-cv-1282 (W.D. Pa. 2019) ................................................................................. 37

*Doggie Dental Inc. v. Max_Buy*,

    No. 19-cv-746 (W.D. Pa. 2019) ................................................................................... 37

*Doggie Dental Inc. v. Worthbuyer*,

    No. 19-cv-1283 (W.D. Pa. 2019) ................................................................................. 37

*eBay Inc. v. MercExchange, L.L.C.*,

    547 U.S. 388, 391 (2006) ............................................................................................ 18

*Ecri v. McGraw-Hill, Inc.*,

    809 F.2d 223, 226 (3d Cir. 1987) ............................................................................... 20

*Elliott v. Kiesewetter*,

    98 F.3d 47, 58 (3d Cir. 1996) ......................................................................... 26, 27, 28

*F.T. Int'l Ltd. v. Mason*,

    2000 WL 1514881, at *3 (E.D. Pa. 2000) .................................................................. 28

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

    499 U.S. 340, 361 (1991) ....................................................................................... 18, 33

*Franklin Mint, Inc. v. Franklin Mint, Ltd.*,

    331 F. Supp. 827, 830 (E.D. Pa. 1971) ...................................................................... 21

*Garcia v. Google, Inc.*,

    789 F.3d 733 (9th Cir. 2015) ...................................................................................... 21

*Gentex Corp v. Abbott,*

978 F. Supp. 2d 391, 395 (M.D. Pa. 2013) ............................................................... 7, 12

*Grondin v. Fanatics, Inc.,*

2024 U.S. App. LEXIS 32729, at *3 (3d Cir. 2024).............................................. 18, 33

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.,*

527 U.S. 308, 325 (1999) .............................................................................................. 26

*Gucci Am., Inc. v. Weixing Li,*

768 F.3d 122, 126 (2d Cir. 2014)................................................................................. 30

*Hammons v. Ethicon, Inc.,*

240 A.3d 537, 548 (Pa. 2020)......................................................................................... 7

*Helene Curtis Industries v. Church & Dwight Co., Inc.,*

560 F.2d 1325, 1333 (7th Cir. 1977)........................................................................... 23

*Hoxworth v. Blinder, Robinson & Co., Inc.,*

903 F.2d 186, 194-97 (3d Cir. 1990)...................................................... 5, 26, 27, 36

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,*

882 F.2d 797, 805 (3d Cir. 1989)................................................................................ 36

*International Shoe Co. v. Washington,*

326 U.S. 310, 316 ...................................................................................................... 9, 10

*JCW Invs., Inc. v. Novelty, Inc.,*

482 F.3d 910, 915 (7th Cir. 2007)............................................................................... 19

*Jurista v. Amerinox Processing, Inc.*,

    492 B.R. 707, 783 (D.N.J. 2013).................................................................................... 36

*Kelly Toys Holdings, LLC v. Alialialill Store*,

    606 F. Supp. 3d 32, 53 ................................................................................................. 30

*Koken v. Pension Benefit Guar. Corp.*,

    430 F. Supp. 2d 493, 499 (E.D. Pa. 2006).................................................................... 14

*Kos Pharms., Inc. v. Andrx Corp.*,

    369 F.3d 700, 708 (3d Cir. 2004)........................................................................... 17, 22

*Law Sch. Admission Council, Inc. v. Tatro*,

    153 F. Supp. 3d 714, 720 (E.D. Pa. 2015).................................................................. 12

*Malibu Media, LLC v. Doe*,

    109 F. Supp. 3d 165, 168 (D.D.C. 2015)..................................................................... 34

*Manny Film LLC v. Doe*,

    98 F. Supp. 3d 693, 694 (D.N.J. 2015)................................................................... 32, 34

*Marsellis-Warner Corp. v. Rabens*,

    51 F. Supp. 2d 508, 536 (D.N.J. 1999)........................................................................ 26

*Marten v. Godwin*,

    499 F.3d 290, 296 (3d Cir. 2007)............................................................................... 6, 7

*Milliken v. Meyer*,

    311 U.S. 457, 463 (1940) ............................................................................................. 9

8

*N. Atl. Operating Co. v. Huang,*

194 F. Supp. 3d 634, 639 (E.D. Mich. 2016) ............................................................... 32

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*

704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ............................................................... 23

*North Face Apparel Corp. v. TC Fashions, Inc.,*

2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. 2006) ............................................. 27

*O'Connor v. Sandy Lane Hotel Co., Ltd.,*

496 F.3d 312, 317 (3d Cir. 2007) ........................................................................... 9, 10

*Oglala Sioux Tribe v. Hunnik,*

298 F.R.D. 453, 458 (D.S.D. 2014) ........................................................................... 35

*Phillip Morris USA Inc. v. Bros. Grocery Corp.,*

2014 U.S. Dist. LEXIS 112274, at *13 (E.D.N.Y. 2014) ........................................... 23

*Rapid Slicer, LLC v. Buyspry,*

Civil Action No. 19-cv-249-MJH ............................................................................. 37

*Reilly v. City of Harrisburg,*

858 F.3d 173, 176 (3d Cir. 2017) ............................................................................. 17

*Remick v. Manfredy,*

238 F.3d 248, 255 (3d Cir. 2001) ............................................................................. 10

*Renner v. Lanard Toys,*

33 F.3d 277, 279 (3d Cir. 1994) ................................................................................. 6

9

*Reybold Grp. of Cos. V. Doe,*

    323 F.R.D. 205, 208 ............................................................................................ 32, 33

*Roadget Bus. Pte. Ltd. v. Individuals, Corp., LLC,*

    735 F. Supp. 3d 981, 983 (N.D. Ill. 2024) ................................................................. 27

*Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a*

    *Angelbaby_factory,*

    No. 17-cv-1840-KPF, Dkt. 11 (S.D.N.Y. 2017).......................................................... 37

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store,*

    No. 17-cv- 4884-KPF, Dkt. 6 (S.D.N.Y. 2017)........................................................... 37

*Saudi v. Acomarit Maritimes Servs., S.A.,*

    114 F. App'x 449, 455 (3d Cir. 2004) ...................................................................... 14

*SEC v. Caledonian Bank Ltd.,*

    317 F.R.D. 358 (S.D.N.Y. 2016) ............................................................................. 28

*Semitool, Inc. v. Tokyo Electron Am., Inc.,*

    208 F.R.D. 273, 277 (N.D. Cal. 2002) ..................................................................... 35

*Shields v. Zuccarini,*

    254 F.3d 476, 482 (3d Cir. 2001)........................................................................ 18, 22

*Showtech Merchandising, Inc. v. Various John Doe,*

    2:12-cv-1270 (W.D. Pa. 2012); ............................................................................... 37

*Sköld v. Galderma Labs., L.P.,*

99 F. Supp. 3d 585, 602–03 (E.D. Pa. 2015)............................................................... 14

*Sprint Communs. Co. L.P. v. CAT Communs. Int'l, Inc.,*

    335 F.3d 235, 240 (3d Cir. 2003).................................................................. 36

*Tanksley v. Daniel,*

    902 F.3d 165, 173 (3d Cir. 2018).................................................................. 19

*TD Bank N.A. v. Hill,*

    928 F.3d 259, 278 (3d Cir. 2019)................................................... 18, 20, 21, 22

*Toys "R" Us, Inc. v. Step Two, S.A.,*

    318 F.3d 446, 452 (3d Cir. 2003)................................................................. 11, 14

*Vision Films, Inc. v. Doe,*

    2013 U.S. Dist. LEXIS 38440, at *3............................................................ 33, 34

*Walter v. Stacey,*

    837 A.2d 1205, 1207-10 (Pa. Super. 2003)..................................................... 5

*Warner Bros. Entm't, Inc. v. WTV Sys.,*

    824 F. Supp. 2d 1003, 1014–15 (C.D. Cal. 2011)............................................. 23

*William Mark Corp. v. 1 & CC,*

    2019 U.S. Dist. LEXIS 85690, at *11 (S.D.N.Y. 2019)...................................... 30

*Willyoung v. Colorado Custom Hardware, Inc.,*

    2009 U.S. Dist. LEXIS 91557, at *13 (W.D. Pa. 2009)...................................... 12

*Wow-Virtual Reality, Inc. v. 740452063,*

No. 18-cv-3618, Dkt. 18 (S.D.N.Y. 2018) ................................................................. 37

*Wowwee Grp., LTD v. Haoqin*,

2019 U.S. Dist. LEXIS 48408, at *15–17 (S.D.N.Y. 2019) ...................................... 30

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,

952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ........................................................ 10, 12

**Statutes**

17 U.S.C. § 101, *et seq* ................................................................................................ 5

17 U.S.C. § 502(a) ...................................................................................................... 17

17 U.S.C. §§ 501, 504 .........................................................................................passim

28 U.S.C. § 1331 .......................................................................................................... 5

28 U.S.C. § 1391 .......................................................................................................... 5

28 U.S.C. §§ 1338(a)–(b) ........................................................................................ 5, 14

42 Pa. Cons. Stat. § 5322(a) ............................................................................. 6, 7, 8, 9

42 Pa. Cons. Stat. § 5322(b) ...................................................................................... 6, 7

Fed. R. Civ. P. 26(d)(1) .............................................................................................. 32

Fed. R. Civ. P. 26(d)(2)(C), (f) ................................................................................... 32

Fed. R. Civ. P. 64 ......................................................................................................... 5

Fed. R. Civ. P. 65 ...................................................................................... 5, 17, 22, 26

Federal Rule of Civil Procedure 26(f) ........................................................................ 32

Federal Rule of Civil Procedure 4(k)(2) ........................................................................ 6, 13, 14, 15

Federal Rule of Civil Procedure 65(b)........................................................................................... 18

Federal Rule of Civil Procedure 65(c) ........................................................................................... 36

**Constitutional Provisions**

U.S. CONST. art. 1, § 8, cl. 8 ................................................................................................ 24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHENZHEN KESITE DIGITAL
TECHNOLOGY CO., LTD,

                Plaintiff,

      v.

SCHEDULE A DEFENDANTS,

                Defendants.

Civil Case No.: 2:26-cv-1532-MJH

**FILED UNDER SEAL**

## I.    INTRODUCTION

Plaintiff, Shenzhen Kesite Digital Technology Co., Ltd ("Plaintiff"), submits this memorandum of law in support of its ex parte application for: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against defendants listed in the Schedule A (collectively, "Defendants") and the third-party entities identified below.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Copyright and Products

Plaintiff Shenzhen Kesite Digital Technology Co., Ltd is a company from Shenzhen, Guangdong, China that designs, manufactures, and ███████████ ████████████████████████████. Plaintiff derives significant

1

profits from the sale and distribution of its products, which are advertised and

marketed using its copyrighted product photographs. Here, Plaintiff owns Copyright

Registration No. ████████████████████████████████████

████████████████████████), which protects the creative content (the "Works-

In-Suit") of those photographs. Plaintiff has spent substantial time, money, and

resources developing and advertising the Works-In-Suit. The Works-In-Suit have

grown successful and have garnered the attention of the public, who associate the

Works-In-Suit exclusively with Plaintiff. A side-by-side comparison of the Works-In-

Suit and Defendants' infringing listings is set forth below:[1]

---

[1] The Copyright Registrations are valid, subsisting, and in full force and effect. See Complaint **Exhibit A** for the Copyright Registration Numbers and images of the relevant copyrighted works.



### B.    The Defendants' Wrongful Conduct

Defendants are a collection of foreign, anonymous, and sophisticated sellers on the

Amazon.com online marketplace, operating under seller identities and/or online

marketplace accounts as set forth in **Schedule "A"** to the Complaint. Defendants, upon

information and belief, are an interrelated group of infringers working in active concert

and have communicated, cooperated, shared information, and coordinated their efforts to

create an infringing marketplace operating in parallel to Plaintiff's legitimate marketplace.

Defendants share unique identifiers, such as design elements and similarities among

unauthorized products, establishing a logical relationship that suggests they are operating

cooperatively throughout the supply chain.[2] Defendants use aliases to avoid liability, going

to great lengths to conceal their identities and the full extent of their intertwined, illegal

---

[2] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods).

3

operation.[3] This allows Defendants to offer the infringing works at a price lower than the Works-In-Suit.

Defendants regularly create new websites and online marketplace accounts using aliases to avoid detection by Plaintiff. The identification of the individuals behind these marketplace accounts is difficult to attain given the fictitious names and addresses associated with the accounts. Upon information and belief, Defendants also maintain offshore bank accounts and regularly move funds from their PayPal accounts to the offshore accounts.

Defendants are selling unauthorized products that are based on and derived from the copyrighted subject matter of the Works-In-Suit.[4] Defendants conduct business, offer for sale, and, on information and belief, have sold and continue to sell the infringing works throughout the United States, including in Pennsylvania and this Judicial District. Defendants facilitate sales by designing their storefront to appear to unknowing customers to be authorized online retailers selling genuine Works-In-Suit. Defendants have full knowledge of Plaintiff's ownership of the Works-In-Suit, including Plaintiff's exclusive right to use and license the work.

///

///

---

[3] *See* Xinhua, *Fighting China's Counterfeits in the Online Era*, China Daily (Sept. 19, 2017), available at www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm.

[4] *See* Complaint, ¶ 1 for pictures of the copyrighted works compared to the Defendants' works.

4

### III.   ARGUMENT

This Court can issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the movant, before the adverse party may be heard in opposition. *See* Fed. R. Civ. P. 65(b). In Pennsylvania, a pre-judgment restraint of existing assets is appropriate where a plaintiff asserts a claim for monetary damages and posts a bond. *Walter v. Stacey*, 837 A.2d 1205, 1207-10 (Pa. Super. 2003) (assets restrained in action seeking monetary damages for wrongful death); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 194-97 (3d Cir. 1990) (acknowledging the district court's power to issue a preliminary injunction to protect a potential future damages remedy); *see also* Fed. R. Civ. P. 64 ("[E]very remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). Here, Defendants' willful infringing conduct is causing and will continue to cause Plaintiff irreparable harm and, thus, an *ex parte* TRO is warranted.

#### A.   The Court May Exercise Jurisdiction Over Defendants

This Court has subject matter jurisdiction over this action under the Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331.

Venue is proper under 28 U.S.C. § 1391. Defendants reside outside of the United States and are subject to venue in any district. Defendants solicit business in this Judicial District and, upon information and belief, conduct and transact significant business in this district.

5

This Court also has personal jurisdiction over the Defendants under the Pennsylvania long-arm arm statute 42 Pa. Cons. Stat. § 5322 and Federal Rule of Civil Procedure 4(k)(2). Because exercising personal jurisdiction under 42 Pa. Cons. Stat. § 5322 is consistent with due process; and because Plaintiff's claim arises under federal copyright law and Defendants are, therefore, not subject to jurisdiction is any state's courts of general jurisdiction, and exercising jurisdiction is consistent with the United States constitution and laws.

1. **The Court May Exercise Personal Jurisdiction Over Defendants Under 42 Pa. Cons. Stat. § 5322**

Determining whether a court may exercise personal jurisdiction over a non-resident defendant is a two-step inquiry. The court must first determine whether exercising personal jurisdiction is authorized under the appropriate state long-arm statute. *Renner v. Lanard Toys*, 33 F.3d 277, 279 (3d Cir. 1994); *see* 42 Pa. Cons. Stat. § 5322. It then must be determined whether exercising personal jurisdiction meets the requirements of constitutional due process. *Id.*

This Court may exercise personal jurisdiction over the Defendants under 42 Pa. Cons. Stat. § 5322 "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Pennsylvania state law provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this

6

Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); *Marten*, 499 F.3d at 296. Pennsylvania's Long Arm Statute is, therefore, coextensive with the Due Process Clause. *Gentex Corp v. Abbott*, 978 F. Supp. 2d 391, 395 (M.D. Pa. 2013).

42 Pa. Cons. Stat. § 5322(a) (the "Pennsylvania Long-Arm Statute") authorizes a tribunal of the Commonwealth of Pennsylvania to exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action or other matter arising from such person: transacting any business in the Commonwealth, causing harm or tortious injury by an act or omission in or outside the Commonwealth, or committing any violation within the jurisdiction of the Commonwealth of any statute or rule or regulation promulgated thereunder by any governmental unit. 42 Pa. Cons. Stat. § 5322(a)(1), (3), (4), (10).

"Transacting any business in the Commonwealth" includes: (i) the doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object; (ii) the doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts; (iii) the shipping of merchandise directly or indirectly into or through this Commonwealth; (iv) the engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any

government unit of this Commonwealth. 42 Pa. Cons. Stat. § 5322(a)(1)(i)–(iv).

The Pennsylvania long-arm statute confers thus personal jurisdiction over Defendants because of their habitual transacting of business in this jurisdiction. 42 Pa. Cons. Stat. § 5322(a)(1). Defendants regularly, through a series of similar acts, conduct, transact, and/or solicit business in Pennsylvania and this Judicial District and realize pecuniary gain doing so. *Id.* § 5322(a)(1)(i). The acts of Defendants constitute a series of similar acts given the clear relationship between the Defendants, identified by shared unique storefronts and the striking similarity of the infringing products, highly suggesting that Defendants' illegal operations arise out of the same series of transactions, marked by a cooperative effort throughout the supply chain.

This Court has personal jurisdiction over Defendants because they have shipped and continue to ship merchandise into this jurisdiction. 42 Pa. Cons. Stat. § 5322 (a)(1)(iii). Defendants direct their business activities toward Pennsylvania consumers through the Amazon.com online marketplace, through which Defendants offer shipping to Pennsylvania and this Judicial District. Defendants accept U.S. Dollars and calculate, charge, and remit tax based on sales to both Pennsylvania and this Judicial District. After completing a purchase from Defendants, Defendants ship the infringing products directly to Pennsylvania and this Judicial district. *Id.*

This Court has personal jurisdiction over Defendants because Defendants caused harm to Plaintiff by acts outside the Commonwealth. *Id.* § 5322(a)(4). Defendants are

depriving Plaintiff of its right to fairly compete for space online by reducing the visibility of Plaintiff's copyrighted works. Defendants are also reducing the retail market value of Plaintiff's copyrighted works through diminished pricing, likely accomplished through cooperative efforts throughout the supply chain. Additionally, Defendants have irreparably damaged Plaintiff by depriving Plaintiff of control over the creative content and quality of the works, as well as the ability to license the valuable copyrights. This loss of control has resulted in an irreversible loss of goodwill and reputation with Plaintiff's hard-earned customers.

### 2. Exercising Personal Jurisdiction Over Defendants Comports With Due Process

Exercising personal jurisdiction over Defendants pursuant to 42 Pa. Cons. Stat. § 5322 is consistent with constitutional due process since Defendants have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

For a federal court to exercise personal jurisdiction over a defendant in accordance with the long-arm statute of the jurisdiction, exercising personal jurisdiction must be consistent with the Due Process Clause of the United States Constitution. The defendant's contacts with the forum state must be such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.*; *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). To determine whether the

9

maintenance of the suit does not offend "traditional notions of fair play and substantial justice," the defendant must be found to have sufficient "minimum contacts" with the forum state. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *International Shoe Co.*, 326 U.S. at 316). Minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Remick*, 238 F.3d at 255 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Additionally, for personal jurisdiction to be valid and comport with the Due Process Clause, the litigation at issue must "arise out of or relate to" at least one of those activities. *O'Connor*, 496 F.3d at 317.

This Court has jurisdiction over Defendants based on their internet-based sales into the United States and this judicial district. The seminal case of *Zippo Mfg. Co. v. Zippo Dot Com, Inc* is informative on whether a defendant who transacts business in a jurisdiction through the internet can be deemed to have sufficient "minimum contacts" with the jurisdiction as to comport with the Due Process Clause. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *Zippo Mfg. Co.* established a sliding-scale test to determine personal jurisdiction based on a defendant's internet-based activities. The test categorizes websites into three categories based on their level of interactivity and the commercial nature of the information exchange, with the court explaining:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This

sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *Id.*

The result of applying the test is that, in cases where a defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of the use of the website, personal jurisdiction exists. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003).

The Third Circuit clarified the *Zippo* framework in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3rd Cir. 2003) by emphasizing the intentionality requirement—i.e., requiring that the defendant intentionally conducts business with residents of the forum state. *Id.* at 452. This aligns the *Zippo* framework with the purposeful availment requirement, necessitating "evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* at 454.

11

Here, Defendants directed their business activities at consumers in Pennsylvania and this Judicial District through the Online Marketplaces, through which consumers can view, purchase, and receive delivery for Defendants' infringing products as well as communicate with Defendants regarding those products. Defendants' ability to "knowingly interact" with residents of Pennsylvania and this Judicial District, in addition to the repeated transactions and sales made to consumers in Pennsylvania, constitutes sufficient purposeful availment as to subject Defendants to the personal jurisdiction of this Court. *Id.* at 454; *see Willyoung v. Colorado Custom Hardware, Inc.*, 2009 U.S. Dist. LEXIS 91557, at *13 (W.D. Pa. 2009) (finding personal jurisdiction where defendant intentionally and repeatedly sold its products over the internet to Pennsylvania customers); *Gentex Corp.*, 978 F. Supp. 2d at 398 (M.D. Pa. 2013) (finding personal jurisdiction where Pennsylvania customers placed at least 17 orders on non-resident defendant's interactive website).

Defendants' storefronts fall on the end of the *Zippo* spectrum of a defendant "clearly [doing] business over the internet," rather than a passive website which is merely accessible to users in foreign jurisdictions. *Zippo Mfg. Co.*, 952 F. Supp. at 1124; *see Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 720 (E.D. Pa. 2015). Even if Defendants' storefronts would be placed in the middle of the scale, examining "the commercial nature of the exchange of information that occurs on the Web site," it is clear that the interaction and exchange of information by Pennsylvania consumers on

12

Defendants' storefronts are the exact type of commercial interactions that the *Zippo* court foresaw when formulating the test. *Id.*

Additionally, the present suit arises out of Defendants' contacts with Pennsylvania and this Judicial District. *O'Connor*, 496 F.3d at 317. The products that are offered for sale, purchased and delivered to Pennsylvania and this Judicial District, and subject to customer communications with Defendants are the infringing products from which this suit arises.

In sum, this Court's exercise of personal jurisdiction over Defendants complies with constitutional due process. Defendants have personally availed themselves of the market and laws of Pennsylvania and this Judicial District and have sufficient minimum contacts with the Commonwealth and this Judicial District such that the maintenance of the case will not offend "traditional notions of fair play and substantial justice."

### 3. The Court May Exercise Personal Jurisdiction Over Defendants Rule 4(k)(2)

Even if Defendants suggest that their use of the Online Marketplace does not constitute sufficient contacts with Pennsylvania and the Court accepts that argument, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over defendants when (1) a claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) exercising jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2); *see Saudi v.*

13

*Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 455 (3d Cir. 2004) (applying the elements of Fed. R. Civ. P. 4(k)(2)).

The claims asserted against Defendants arise under federal copyright law, and therefore Defendants are not subject to jurisdiction in any state's courts of general jurisdiction. Because "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338(a).

Exercising jurisdiction over Defendants is consistent with the United States Constitution. Rule 4(k)(2) (the "federal long-arm statute") remedies a gap in the enforcement of federal laws, allowing a court to find personal jurisdiction when a defendant's contacts with the United States as a whole is consistent with Due Process. *Koken v. Pension Benefit Guar. Corp.*, 430 F. Supp. 2d 493, 499 (E.D. Pa. 2006) (citing Fed. R. Civ. P. 4 Advisory Committee Note & *Central States Southeast and Southwest Areas Pension Fund*, 2000 WL 1015937, at *4 (N.D. Ill. 2000)); *Sköld v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 602–03 (E.D. Pa. 2015) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 n.7 (3d Cir. 2003). Under Rule 4(k)(2), exercising personal jurisdiction over a defendant is proper when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *Sköld*, 99 F. Supp. 3d at 603 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Defendants here have substantial contacts with the United States as a whole.

14

Defendants have purposefully directed their activities at the aggregate United States. The Online Marketplace that Defendants have voluntarily opened accounts with for the purpose of selling the infringing products targets the entirety of the United States. The selected Online Marketplace is promoted in the United States, provides prices in U.S. Dollars, advertises free shipping to U.S. buyers, including those in Pennsylvania, and provides reviews of users in the United States. Defendants have sold, and/or continue to sell, the infringing products in the United States. *Xu Decl., ¶¶ 9-10*. Defendants additionally provide U.S. buyers the option to communicate with Defendants regarding the infringing products.

This case results from Defendants' wrongful activities in the United States. Defendants are depriving Plaintiff of its right to fairly compete online, reducing the retail market value of products bearing Plaintiff's copyrighted works, irreparably damaging Plaintiff's goodwill and reputation, and causing Plaintiff the loss of control over the creative content and quality of the works and the ability to license the valuable copyrights.

In sum, this Court may exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), the "federal long-arm statute." Plaintiff's claim arises under federal copyright law, and therefore Defendant is not subject to jurisdiction in any state's courts of general jurisdiction. Additionally, the present litigation results from Defendants' activities directed at the aggregate United States.

Therefore, this Court's exercise of personal jurisdiction is proper.

### B. Plaintiff is Entitled to an *Ex Parte* Temporary Restraining Order and Preliminary Injunction

An *ex parte* order is essential to this case to prevent Plaintiff from suffering immediate and irreparable injury. Defendants are actively promoting, advertising, selling and infringing Plaintiff's copyrighted works via their interactive e-commerce storefronts. Defendants are passing off their infringing products as genuine and causing irreparable harm to Plaintiff, including loss of good will with customers, decreased market price of the copyrighted works, increased costs associated with educating customers, increased marketing costs, and loss of profit resulting from Defendants' displacement of Plaintiff's legitimate, copyrighted works with infringing knock-off products. The entry of an *ex parte* temporary restraining order and preliminary injunction which precludes Defendants from continuing to display their infringing products via the Online Marketplace or modifying or deleting any related content or data would halt Defendants from benefiting from their illegal and wrongful use of Plaintiffs copyrights and preserve the status quo until such a time as a hearing can be held. Absent a restraining order, Defendants will significantly alter the status quo before the Court can determine the parties' respective rights.

The Court has the authority to issue an *ex parte* temporary restraining order. Federal Rule of Civil Procedure 65(b) states, in pertinent part, that "[t]he Court may

16

issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). To evaluate whether preliminary relief is warranted, the Third Circuit has held that the moving party must show: (1) a reasonable probability of success in the litigation; (2) that it will suffer irreparable harm if the injunction is not granted; (3) the balance of hardships tips in its favor; and (4) that the public interest favors such relief. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)); *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).

The Copyright Act additionally provides that any court with jurisdiction may grant temporary and final injunctions to prevent the infringement of a copyright. 17 U.S.C. § 502(a). The factors to consider in deciding whether to grant relief under 17 U.S.C. § 502(a) are similar to those that are weighed under Federal Rule of Civil Procedure 65(b). The district court must consider whether "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public

17

interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) (citing *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 nn. 2–3 (3d Cir. 1996)); *see TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Plaintiff is entitled to preliminary relief since it meets all requirements of both 17 U.S.C. § 502(a) and Federal Rule of Civil Procedure 65(b). Plaintiff will likely succeed on the merits of its copyright infringement claim, has been irreparably harmed as a result of Defendants infringing activities, the balance of hardship tips heavily in Plaintiff's favor, and granting the temporary restraining order and preliminary injunction is in the public interest.

### 1.  Plaintiff Will Likely Succeed on the Merits of the Litigation

Plaintiff will likely succeed on its copyright infringement claim asserted under 17 U.S.C. § 501(a). To establish copyright infringement, two elements are required to be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Grondin v. Fanatics, Inc.*, 2024 U.S. App. LEXIS 32729, at *3 (3d Cir. 2024) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Plaintiff is the exclusive owner of the relevant valid copyright. The valid copyright (the "Works-In-Suit") is identified by United States Copyright Registration No. VAu 1-554-153 (Fetal Doppler, FD-1 & Dopcord, D140, Intended to Detect Fetal Heartbeats). The registration, including a copy of the work, is attached to the

18

Complaint as **Exhibit A**.

As shown in Paragraph 1 of the Complaint, Defendants copied the constituent elements of the original works. The element of copying has two components: (a) actual copying, and (b) material appropriation. *Tanksley v. Daniel*, 902 F.3d 165, 173 (3d Cir. 2018). Because direct evidence of "actual copying" is difficult to attain, circumstantial evidence of access and similarity may be used to show "actual copying." *Id.; see JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 915 (7th Cir. 2007). Here, the Works-In-Suit was and is readily available through multiple online sources. Defendants have access to the Works-In-Suit over the internet and can see images of the works. Additionally, Defendants' infringing products are exceptionally similar to the Works-In-Suit, reflecting nearly identical designs, highly suggestive of "actual copying."[5] Material appropriation asks whether the infringing work is "substantially similar" to the copyrighted work. *Tanksley*, 902 F.3d at 174. Substantial similarity asks whether "a 'lay-observer' would believe that the copying was of protectible aspects of the copyrighted work." *Id.* (quoting *Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002)). Again, Defendants' infringing works are strikingly similar to the Works-In-Suit and, comparing them side by side, are virtually indistinguishable.

Given the foregoing reasons, i.e., that Plaintiff is the owner of valid copyrights, and Defendant copied essentially every original constituent element of the original copyrighted

---

[5] See Paragraph 1 of the Complaint for a comparison of Defendants' infringing works and the Works-In-Suit

works, Plaintiff has a high likelihood of success on the merits of its 17 U.S.C. § 501(a) copyright infringement claim.

### 2. Plaintiff Will Suffer Irreparable Harm if Preliminary Relief is Not Granted

17 U.S.C. § 502(a) states that the moving party must have suffered irreparable harm that is causally attributable to the challenged infringement. *TD Bank N.A.*, 928 F.3d at 280. This standard is higher than the former presumption of irreparable harm in copyright cases. *Id.* at 279. Federal Rule of Civil Procedure 65(b) requires a similar standard, requiring a clear showing of immediate irreparable harm, rather than merely a risk of irreparable harm. *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). For the following reasons, Plaintiff easily meets the burden of showing immediate irreparable harm that is causally attributable to Defendants' sale of the infringing products.

Plaintiff is being irreparably harmed on a variety of fronts by Defendants' continued sale of the infringing works. The harm Defendants have caused and continue to cause to Plaintiff is immediate and, without preliminary relief, Plaintiff will continue to suffer irreparable harm. Defendants' sale of the infringing products deprives Plaintiff of visibility in Online Marketplaces, both raising costs to market its works and educate customers about its copyrighted works. Defendants are additionally diluting the retail market price of the Works-In-Suit by undercutting the price of Plaintiff's original works, harming Plaintiff's competitive advantage over other sellers, including, but not

20

limited to Defendants. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) (noting that even without a presumption of irreparable harm, jeopardy of Apple's competitive position caused by Defendant's copying of Apple's copyrighted program constitutes irreparable harm). This results in a need for Plaintiff to either lower its prices below a profitable level or stand by and watch customers purchase Defendants' infringing products for a fraction of the value of the Works-In-Suit. Defendants are also causing a severe degradation in Plaintiff's goodwill with its customers, which was built at the expense of substantial resources over years. Defendants' sale of the infringing products has resulted in Plaintiff losing control over the creative content and quality of its works, as well as the ability to license the valuable copyrights. *See Franklin Mint, Inc. v. Franklin Mint, Ltd.*, 331 F. Supp. 827, 830 (E.D. Pa. 1971) ("Even if defendant matches the high quality of plaintiff's products . . . plaintiff is still entitled to have his reputation within his control . . . By depriving plaintiff of the ability to control the nature and quality of defendant's goods, defendant inflicts serious harm upon plaintiff.").

Plaintiff's situation is factually distinct from cases where courts have not found sufficient irreparable harm to warrant issuing injunctive relief. *See, e.g.*, *Garcia v. Google, Inc.*, 789 F.3d 733 (9th Cir. 2015); *TD Bank N.A.*, 928 F.3d 259. In *TD Bank N.A.*, the plaintiff did not sell, license, or use the infringed work, but merely contended that the defendant's continuing infringement caused irreparable harm by depriving the plaintiff

of the "right to not use the copyright." *TD Bank N.A.*, 928 F.3d at 280. The court held

that this did not constitute irreparable harm—neither the prospect of continued

infringement nor a "right not to use" the copyright is sufficient to establish irreparable

harm. *Id.* Plaintiff is, in no way, contending that its harm is merely speculative,

immaterial, or simply a deprivation of the right to not utilize its copyright like in TD

Bank *N.A.* Plaintiff's harm is concrete and is represented not only through a loss of

control but through a severe economic impact on its business.

The harm Plaintiff has suffered and is continuing to suffer is irreparable. The

only means to limit that harm is through the issuance of a temporary restraining order

and preliminary injunction.

### 3. The Balance of Hardship Tips in Plaintiff's Favor

Defendants, by infringing Plaintiff's copyrights, will not face valid hardship if

their illegal operations are enjoined. In granting preliminary relief under Federal Rule

of Civil Procedure 65(b) and 17 U.S.C. § 502(a) , this Court must consider whether the

harm to the Plaintiff if the relief is not granted outweighs the harm to Defendants if the

relief is granted. *See TD Bank N.A.*, 928 F.3d at 278; *Shields*, 254 F.3d at 482; *Kos Pharms.,*

*Inc.*, 369 F.3d at 708. Courts have repeatedly favored the copyright owner when

weighing the harm caused to each party, reasoning that a copyright infringer acts at

their own peril and granting preliminary relief is merely asking them to "do no more

than refrain from what they have no right to do in the first place." *Phillip Morris USA*

*Inc. v. Bros. Grocery Corp.*, 2014 U.S. Dist. LEXIS 112274, at *13 (E.D.N.Y. 2014) (citing *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)); *see Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1014–15 (C.D. Cal. 2011); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (quoting *Helene Curtis Industries v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir. 1977) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'").

Any harm encountered by Defendants resulting from a temporary restraining order and preliminary injunction would not outweigh the harm inflicted on Plaintiff. Any setback that Defendants do face would result exclusively from "refrain[ing] from what they have no right to do in the first place." *Phillip Morris USA Inc. v. Bros. Grocery Corp.*, 2014 U.S. Dist. LEXIS 112274, at *13 (E.D.N.Y. 2014). Defendants' infringing acts are being committed at their own peril and at Plaintiff's expense, and any lost profits derived from preliminary relief should not be held as a hardship that comes close to the immense loss that Plaintiff has suffered and continues to suffer, including loss of good will with customers, decreased market price of the copyrighted works, increased costs associated with educating customers, increased marketing costs, and loss of profit resulting from Defendants' displacement of Plaintiff's legitimate, copyrighted works on Online Marketplaces with infringing knock-off products.

23

Plaintiff's hardship far outweighs that of Defendant. Any hardship Defendants face from a temporary restraining order and preliminary injunction would arise solely from being forced to halt their illegal operation. Plaintiff is the only party in this action that would face any legitimate hardship from the outcome of the decision of whether to grant the order.

4. **Issuance of the Temporary Restraining Order and Preliminary Injunction Serves the Public Interest**

Issuance of preliminary relief will serve the public interest by upholding copyright protections and reinforcing the virtues of free expression that are built into the Constitution. "It is virtually axiomatic that the public interest can only be served by upholding copyright protections, and correspondingly, prevent the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). Article 1, Section 8, Clause 8 of the United States Constitution even articulates that "free expression is enriched by protecting the creation of authors from exploitation by others." *CMM Cable, Inc. v. Keymarket Communs., Inc.*, 870 F. Supp. 631, 640 (M.D. Pa. 1994) (quoting U.S. CONST. art. 1, § 8, cl. 8). Plaintiff's ability to promote, sell, and continue production of its original works is only achievable through preliminary relief, and without it, the public interest that is foundational to copyright law will be severely damaged.

Issuance of preliminary relief is consistent with the public interest of upholding

24

copyright protections because of Plaintiff's injury and clear likelihood of success. The Third Circuit has stated that, while evaluation of the four necessary elements is important in awarding preliminary injunctive relief, as a practical matter, if a plaintiff demonstrates likelihood of success and irreparable injury, public interest will likely favor the plaintiff. *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Plaintiff has demonstrated that it has a high likelihood of success on its copyright infringement claim and has suffered severe and irreparable injury resulting from Defendants' sale of infringing products; therefore, public interest favors the issuance of the preliminary relief. The damage that Defendants' continued sale of infringing products will cause Plaintiff will not be halted without preliminary relief, and the public interest is not benefited by the continuation of such a violation of federal copyright law. Defendants will continue to create new accounts and use new aliases to sell the infringing works. This will allow Defendants to evade any policing efforts by Plaintiff and will incentivize other infringers to continue violating Plaintiff's copyrights as well as those of other copyright holders and aspiring creators. This continuing infringement will lead to even more customer confusion and more sales of infringing, inferior goods that unsuspecting customers believe are legitimate products.

C.    **Plaintiff is Entitled to an Order (1) Preventing the Fraudulent Transfer of Assets, and (2) Freezing Defendants' Merchant Storefronts**

1. **Defendants' Assets Must be Frozen**

Plaintiff requests that the Court grant additional *ex parte* relief restraining the

transfer of funds held or received by any online marketplace or other financial institution for the benefit of any of the Defendants. Plaintiff has demonstrated a high likelihood of success on the merits of its copyright infringement claim, and therefore, damages provided by the Copyright Act are likely to be awarded to Plaintiff. 17 U.S.C. §§ 501, 504. It is unlikely that Defendants possess the funds to fully account for their infringements of Plaintiff's copyrights. Additionally, Defendants are anonymous sellers located in foreign countries and are likely to transfer and hide their funds if their assets are not frozen, leading to a high probability that Plaintiff will be unable to recover damages. Defendants' businesses are inherently deceptive, and they are expending great effort to hide their identity and avoid policing efforts.

The Court has the authority to grant this order. The Supreme Court has held that district courts have the authority to grant prejudgment asset freezes in cases seeking equitable relief. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.*, 527 U.S. 308, 325 (1999). The holding of *Grupo Mexicano* is consistent with the Third Circuit's stance on district courts' authority to grant prejudgment asset freezes. *See, e.g.*, *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990); *Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996). Additionally, under Federal Rule of Civil Procedure 65, district courts have the inherent equity power to issue orders freezing the assets of defendants. Fed. R. Civ. P. 65; *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 536 (D.N.J. 1999). While the assets frozen should be confined to the profits acquired by a defendant's infringing activity, the

26

burden is on the party resisting the freeze to provide documentary proof that particular assets do not stem from the infringing activity. *See North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. 2006); *Roadget Bus. Pte. Ltd. v. Individuals, Corp., LLC*, 735 F. Supp. 3d 981, 983 (N.D. Ill. 2024).

Plaintiff is seeking equitable relief in the form of recovered profits derived from Defendants' infringing activity, and, therefore, an order to freeze Defendants' assets is appropriate in this action. For a court to exercise its equitable power to protect future damages, a plaintiff must show: (1) that they are likely to become entitled to the encumbered funds upon final judgement, and (2) that without the asset freeze, they will be unable to recover the funds, causing irreparable harm. *Hoxworth*, 903 F.2d at 197; *see also Elliott*, 98 F.3d at 57–58 (applying the *Hoxworth* factors to determine whether the court may issue the plaintiff's sought-after asset freeze).

Plaintiff is likely to become entitled to the encumbered funds upon final judgement. As discussed above, Plaintiff has demonstrated that it has a high likelihood of success on its copyright infringement claim and the corresponding remedy for its 17 U.S.C. § 501(a) claim entitles the owner of a copyright to recover either statutory damages or actual damages suffered by them as a result of infringement, along with the profits derived from a defendant's infringing activity. 17 U.S.C. § 504(a)–(c). This remedy will allow Plaintiff to become entitled to the encumbered assets.

Plaintiff will likely be unable to recover the funds without an asset freeze. In considering whether a plaintiff will be unable to recover the funds, and thus suffer

irreparable harm, the likelihood that the funds will be consumed, dissipated, or fraudulently conveyed is relevant. *Elliott*, 98 F.3d at 58. Defendants are anonymous, foreign parties that systematically and consistently create and delete online storefronts to sell infringing products. Without an asset freeze, Defendants will likely move funds from the Online Storefront into offshore bank and PayPal accounts that will be inaccessible to Plaintiff upon final judgement. Defendants will simply continue in their practices of removing themselves from the Online Marketplace and taking their assets with them, making Plaintiff's recovery of the assets prohibitively difficult or impossible.

The asset freeze may be granted *ex parte*, without providing notice to Defendants. Where advance notice of an order to freeze assets will likely cause a defendant to alienate the relevant assets, orders to freeze assets have been held as appropriate without giving notice to defendants. *See, e.g.*, *F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881, at *3 (E.D. Pa. 2000); *Dama S.P.A.* v. *Doe,* 2015 U.S. Dist. LEXIS 178076, at *4–6 (S.D.N.Y. June 12, 2015); *SEC v. Caledonian Bank Ltd.*, 317 F.R.D. 358 (S.D.N.Y. 2016); *Elliott*, 98 F.3d at 58. The high likelihood that Defendants will consume, dissipate, or otherwise fraudulently convey the funds in the event they have notice of the order would cause the irreparable harm the order is meant to avoid. *See Elliott*, 98 F.3d at 58. Defendants are repeatedly violating federal copyright law and have shown a propensity to circumvent Plaintiff's policing efforts by removing storefronts and user accounts. Given this prior history and disregard for the law, there is good reason to believe that if Defendants have notice of an order freezing their assets, they will take steps to ensure their funds are secured and out of Plaintiff's or the

legal system's reach.

Plaintiff is entitled to an order freezing the assets of Defendant. Plaintiff has demonstrated a high likelihood of success on its copyright infringement claim. Additionally, given their past deceptive behavior and tendency to disregard the law, Defendants are likely to move funds beyond Plaintiff's reach in the absence of an order freezing the funds.

### 2. Defendants' User Accounts and Merchant Storefronts Must be Frozen

Plaintiff requests that the Court issue an order freezing Defendants' user accounts, merchant storefronts, and all undiscovered online marketplace platforms. An order is necessary to prevent Defendants from continuing their illegal, infringing sale of Plaintiff's copyrighted works. The continued sale of Defendants' infringing products will result in further irreparable harm to Plaintiff, compounding the harm, as described above, already suffered by Plaintiff.

17 U.S.C. § 502(a) grants the Court the authority to grant temporary and final injunctions on terms it deems reasonable to prevent or restrain the infringement of a copyright. 17 U.S.C. § 502(a). Courts have granted injunctive relief to prevent further copyright violations in cases where there have been past infringements and there is a substantial likelihood of future infringements. *See, e.g.*, *Broadcast Music, Inc. v. Spring Mt. Bavarian Resort, LTD*, 555 F. Supp. 2d 537, 543 (E.D. Pa. 2008). *Compare id.* at 540, 543, 546 (enjoining defendant's willful and repeated infringement of plaintiff's

29

copyrighted music), *with Broadcast Music, Inc. v. Golden Horse Inn Corp.*, 709 F. Supp. 580, 581–82 (E.D. Pa. 1989) (refusing to enjoin defendant's further infringement of plaintiff's copyright since plaintiff did not demonstrate a substantial likelihood of further infringement).

Plaintiff has demonstrated a substantial likelihood of further infringement. Defendants have repeatedly violated Plaintiff's copyrights, evaded Plaintiff's policing efforts, and continuously delete and create new accounts to maintain their illegal operation and anonymity. Defendants have displayed a total disregard for federal copyright law and display high levels of ingenuity in maintaining their illegal operation. Without an order freezing Defendants' merchant storefronts and user accounts, Defendants will almost certainly continue finding new and innovative ways to avoid compliance with federal copyright law and continue irreparably damaging Plaintiff with their illegal operation.

Courts have issued orders freezing online merchant storefronts similar to Defendants'. *See e.g., Kelly Toys Holdings, LLC v. Alialialill Store*, 606 F. Supp. 3d 32, 53 (quoting *William Mark Corp. v. 1 & CC*, 2019 U.S. Dist. LEXIS 85690, at *11 (S.D.N.Y. 2019)) ("The Defaulting Defendants' past infringing behavior and potential for further activity across multiple [online] marketplace platforms amply suggest that the Defaulting Defendants might continue to engage in infringing activities and counterfeiting unless enjoined by the Court."); *Wowwee Grp., LTD v. Haoqin*, 2019 U.S. Dist. LEXIS 48408, at *15–17 (S.D.N.Y. 2019); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. 2015).

30

Freezing Defendants' online merchant storefronts is the only way to prevent Defendants from continuing their infringing activities and further damaging Plaintiff irreparably. Without the order, there is a substantial likelihood that Defendants will continue infringing Plaintiff's copyrights.

### D.   Expedited Discovery Should Be Granted.

Plaintiff respectfully requests that the Court issue an order authorizing expedited discovery from Defendants, Financial Institutions, and Third Party Service Providers regarding the scope and extent of Defendants' infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Provider, including, without limitation any and all websites, any and all accounts with online marketplace platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other persons in active concert with any of them ("User Accounts"), and any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Infringing Products, which are held by or associated with Defendants, their respective officers,

31

employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Provider and the Financial Institutions.

The Court has the authority to issue an order authorizing expedited discovery from Defendants, Financial Institutions, and Third-Party Service Providers. District courts have the authority to require early document production and permit expedited discovery from defendants and third parties. Fed. R. Civ. P. 26(d)(2)(C), (f); *see Reybold Grp. of Cos. V. Doe*, 323 F.R.D. 205, 208; *Manny Film LLC v. Doe*, 98 F. Supp. 3d 693, 694 (D.N.J. 2015); *N. Atl. Operating Co. v. Huang*, 194 F. Supp. 3d 634, 639 (E.D. Mich. 2016). Generally, parties may not seek discovery before they have conferred pursuant to Federal Rule of Civil Procedure 26(f); however, Rule 26(d)(1) allows a party to seek a court order permitting early discovery before the parties have conferred. *Reybold Grp. Of Cos.*, 323 F.R.D. at 208; Fed. R. Civ. P. 26(d)(1).

Plaintiff has demonstrated a likelihood of success on its copyright infringement case. Courts often request some basic assurance that a plaintiff has a viable claim before permitted expedited discovery, particularly in cases with anonymous defendants. *See Reybold Grp. of Cos.*, 323 F.R.D. at 208 ("[T]his Court and other courts have examined whether that discovery should be permitted (and/or whether 'good cause' exists) by first asking whether the plaintiff has established a *prima facie* case for each essential

element of the claim(s) in question."). Here, Plaintiff has successfully demonstrated that it will likely succeed on its copyright infringement claim asserted under 17 U.S.C. § 501(a). Plaintiff has established ownership of a valid copyright and that Defendant is copying constituent elements of the original work. *Grondin v. Fanatics*, 2024 U.S. App. LEXIS 32729, at *3 (citing *Feist Publ'ns, Inc.*, 499 U.S. at 361); 17 U.S.C. § 501(a).

District courts within the Third Circuit have utilized a "good cause" standard to evaluate whether granting an order permitting expedited discovery is appropriate. *See e.g.*, *Reybold Grp. Of Cos. V. Doe*, 323 F.R.D. at 208. This "good cause" standard requires that the party seeking discovery demonstrates that its request is "reasonable" in light of the circumstances. *Reybold Grp. Of Cos. V. Doe*, 323 F.R.D. at 208. In assessing reasonableness, courts should weigh the need for discovery at an early stage in the litigation against the breadth of the discovery requests and the prejudice to the responding party. *Vision Films, Inc. v. Doe*, 2013 U.S. Dist. LEXIS 38440, at *3. Factors to consider are the timing and context of the discovery, the purpose and scope of the requests and the nature of the burden on the defendant. *Id.*

Plaintiff has demonstrated a strong necessity for early discovery. The need for discovery is immediate and without expedited discovery, there is a strong possibility that Defendants, upon hearing of the present action, will take steps to further conceal their identity and hide or destroy relevant business records and other discoverable material. Defendants have displayed no shortage of behavior that indicates their

willingness to disregard the law and evade detection. There is no reason to believe that they will abruptly choose to begin complying with the law and preserve discoverable materials until after a Rule 26(f) conference. Additionally, the true identities of Defendants are unknown, and if they gain knowledge of this action, they will likely ensure that their identities remain unknown, potentially depriving Plaintiff of the opportunity to effectively pursue discovery and its underlying claim.

The breadth of Plaintiff's discovery requests is not overly broad and serves to inform Plaintiff of the identities of Defendants, the full scope of their illegal operations, the source and location of their inventory of infringing products, and where the proceeds from their infringing enterprises have gone. A narrower set of discovery requests would only reveal a portion of the information vital to Plaintiff's case and may lead Defendants to conceal or destroy materials outside the scope of the requests. Without the requested scope of discovery, Plaintiff will be seriously inhibited from discovering the identities of Defendants and the full scope of their illegal operation. *See Vision Films, Inc.*, 2013 U.S. Dist. LEXIS 38440, at *10 (quoting *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y 2012) ("[Plaintiff] appears to have no other way of obtaining the identities of the alleged infringers . . . . Thus, without granting Plaintiff's request, the defendants cannot be identified or served and the litigation cannot proceed."); *Malibu Media, LLC v. Doe*, 109 F. Supp. 3d 165, 168 (D.D.C. 2015); *Manny Film LLC*, 98 F. Supp. 3d at 695–96.

34

Any prejudice or burden Defendants, their financial institutions, or any third-party service provider may face from expedited discovery is insignificant, particularly in comparison to the harm Plaintiff will encounter without expedited discovery. The material requested from Plaintiff is not so difficult to attain or convey as to cause an undue burden on Defendant or any other party. Plaintiff primarily requests readily available information such as user account details, financial accounts, and similar information. Even in cases where defendants are required to sift through substantial quantities of files, work collaboratively with government or court officials, or even retrieve documents from foreign countries written in other languages, courts have still upheld the request for expedited discovery as not causing undue burden. *See, e.g.*, *Oglala Sioux Tribe v. Hunnik*, 298 F.R.D. 453, 458 (D.S.D. 2014); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002) ("While Defendants claim some logistical inconvenience in responding to the request inasmuch as most of the documents are located in Japan and many may be in Japanese, the Court fails to see why given current communication technology, Defendants cannot respond quickly."). Plaintiff's request is, therefore, reasonable under the circumstances and will not cause Defendant or any other third-party undue burden.

Considering the abovementioned considerations, Plaintiff's request for an *ex parte* order granting expedited discovery, permitting it to discover certain identifying information, including information concerning all of Defendants' Financial Accounts,

Assets and User Accounts and their sales of Infringing Products, is reasonable in light of the circumstances and does not unduly burden Defendants or other third parties. In the absence of an order authorizing expedited discovery, Plaintiff will likely be deprived of the ability to effectively pursue its copyright infringement claim.

### E. Plaintiff's Request for a Security Bond in the Amount of $5,000 is Adequate

Federal Rule of Civil Procedure 65(c) requires that, when a court issues a preliminary injunction or a temporary restraining order, the moving party gives security in an amount the court deems proper. Fed. R. Civ. P. 65(c). Rule 65(c) acts as a device to "protect the opposing party from incurring costs and damages in the event that the stay is wrongfully imposed." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 783 (D.N.J. 2013). The bond additionally acts as a limitation of liability for the moving party, with the Third Circuit emphasizing that a wrongfully enjoined party only has recourse against the bond. *Sprint Communs. Co. L.P. v. CAT Communs. Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003) (quoting *Hoxworth*, 903 F.2d at 210 n.31). Therefore, the amount of the bond is the price the moving party will pay if the injunction is wrongly issued. *Sprint Communs. Co. L.P.*, 335 F.3d at 240 (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 805 (3d Cir. 1989)).

In connection with the Court's order pursuant to its inherent equitable power requiring that the Defendants' Assets and Defendants Financial Accounts be frozen by the Financial Institutions, a $5,000 Security Bond is sufficient. This Security Bond is for

36

the same amount that other plaintiffs have posted in similar cases. *See, e.g., Doggie Dental Inc. v. Go Well*, No. 19-cv-1282 (W.D. Pa. 2019) (issuing temporary restraining order requiring $5,000 bond); *Doggie Dental Inc. v. Worthbuyer*, No. 19-cv-1283 (W.D. Pa. 2019) (issuing temporary restraining order requiring $5,000 bond); *Doggie Dental Inc. v. Max_Buy*, No. 19-cv-746 (W.D. Pa. 2019) (issuing temporary restraining order requiring $5,000 bond); *Doggie Dental Inc. v. Anywill*, No. 19-cv-682 (W.D. Pa. 2019) (issuing temporary restraining order requiring $5,000 bond); *Airigan Solutions, LLC v. Artifacts_Selling*, Civil Action No. 18-cv-1462-NBF (issuing temporary restraining order requiring $5,000 bond); *Airigan Solutions, LLC v. Babymove*, Civil Action No. 19-cv-166-NBF (issuing temporary restraining order requiring $5,000 bond); *Rapid Slicer, LLC v. Buyspry*, Civil Action No. 19-cv-249-MJH (issuing temporary restraining order requiring $5,000 bond); *Showtech Merchandising, Inc. v. Various John Doe*, 2:12-cv-1270 (W.D. Pa. 2012); *Wow-Virtual Reality, Inc. v. 740452063*, No. 18-cv-3618, Dkt. 18 (S.D.N.Y. 2018); *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store*, No. 17-cv- 4884-KPF, Dkt. 6 (S.D.N.Y. 2017); *Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbaby_factory*, No. 17-cv-1840-KPF, Dkt. 11 (S.D.N.Y. 2017).

Here, a $5,000 Security Bond is thus reasonable.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an

order to show cause why a preliminary injunction should not issue; and 4) an order

authorizing expedited discovery.

Date: July 26, 2026                                  Respectfully submitted,

                                                     /s/ Zheng "Andy" Liu
                                                     Zheng "Andy" Liu (CA-279327)
                                                     Aptum Law
                                                     1660 S Amphlett Blvd Suite 315
                                                     San Mateo, CA 94402
                                                     Email: Andy.Liu@AptumLaw.us
                                                     Phone: 650-475-6289

                                                     *ATTORNEY FOR PLAINTIFF*